UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 13

CHERYL A. RANDALL                              :

             Debtor                            :        Bankruptcy No. 06-11832
_____

CHERYL A. RANDALL                              :

                                               :

             Plaintiff

             v.                                :

BANK ONE NATIONAL ASSOCIATION :
As Trustee and                                          Adversary No. 06-0397
BANKERS FIRST MORTGAGE CO.     :

             Defendants
_____

...............................................

MEMORANDUM

...............................................


            The chapter 13 debtor, Cheryl A. Randall, has commenced an adversary

proceeding against defendants Bank One, N.A. and Bankers First Mortgage Co.[1]

Defendant Bank One has filed a motion to dismiss this proceeding pursuant to Fed. R.

Bankr. P. 7012, incorporating Fed. R. Civ. P. 12(b)(1) and (b)(6).

            As will be discussed below, Bank One contends that the claims against it

are barred by the Rooker-Feldman doctrine, res judicata, collateral estoppel and the

statute of limitations.  The plaintiff contends that none of her claims warrant dismissal.

_____

            [1]The plaintiff also included the chapter 13 trustee in her caption, but stated at oral
argument that the trustee is not a party in this litigation.  I have not included the trustee in the
caption.

For the following reasons, the defendant's motion to dismiss will be granted in part and denied in part. Rather than dismiss any of the counts in the complaint, however, it is more appropriate to strike certain requested relief as unavailable, pursuant to Fed. R. Bankr P. 7012, incorporating Fed. R. Civ. P. 12(f).

I.

The plaintiff alleges in her complaint that she entered into a loan agreement with defendant Bankers Trust in December 2000 in connection with home improvements to be made by an entity known as Classic Exteriors by Alan Cherry, Inc. Bankers Trust, as a collateral for this loan, obtained a security interest in real property (which property is not identified expressly, but implicitly is 6112 Upland Street, Philadelphia, Pennsylvania). The plaintiff alleges that at the loan closing she was charged unreasonable and excessive fees, and was given improper notice of her right to cancel the loan transaction. She further asserts that the amount financed was incorrectly disclosed.

The complaint avers that the loan and security interest were ultimately assigned to defendant Bank One, and that this assignee should have been aware of the loan disclosure errors made by Bankers Trust. On April 28, 2003, the plaintiff served upon Bank One notice that she was rescinding the loan transaction.

The plaintiff also alleges that she filed the instant chapter 13 case on May 2, 2006. Bank One thereafter filed a secured proof of claim in the amount of $56,600.

Based upon these allegations, the plaintiff asserts three claims, presumably against both defendants.

2

In Count I she contends that the defendants violated the Pennsylvania Home Improvement Finance Act, 73 P.S. §§ 500-101, et seq.  She seeks treble damages (plus costs and attorneys' fees) against Bankers Trust, and recoupment against Bank One.

In Count II, she maintains that both defendants violated the federal Truth in Lending Act, 15 U.S.C. §§ 1601, et seq.  These violations consisted of material mis-disclosures entitling the plaintiff to rescind the loan transaction resulting in the "termination of any security interest in the Plaintiff's property" and actual or statutory damages of $2,000 and recoupment of the same amount (plus costs and attorneys' fees). Complaint, ¶ 45.

In Count III, the plaintiff asserts that the December 2000 loan was governed by The Home Ownership Equity Protection Act of 1994 ("HOEPA") which necessitated that Bankers Trust make additional loan disclosures to the plaintiff.  Such disclosures allegedly were never provided.  As a result, the plaintiff seeks to rescind the loan transaction and actual or statutory damages of $2,000 and recoupment of the same amount (plus costs and attorneys' fees).

In its motion to dismiss, defendant Bank One asserts that it obtained a state court judgment by default in mortgage foreclosure on the Upland Street property on November 4, 2005, in the amount of $44,757.76.  In support of this allegation, the defendant attached a copy of its request of the court clerk to enter judgment and a copy of the docket entries showing that such request was granted in the amount stated above.  The defendant also asserts that the plaintiff filed two prior chapter 13 cases, both of which were dismissed.

3

The defendant's motion to dismiss is based upon the existence of this state court default judgment as well as the two prior chapter 13 cases.

II.

A.

At the outset, Bank One maintains that the state court foreclosure judgment prevents this court from obtaining subject matter jurisdiction over this adversary proceeding.

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Fed. R. Civ. P 12(b)-(h).  Rule 12(b)(1) permits a party to seek dismissal of a complaint for lack of subject matter jurisdiction, when appropriate.  See generally American Int'l Specialty Lines Ins. Co. v. Towers Financial Corp., 198 B.R. 55, 57 (S.D.N.Y. 1996).  Here, the defendant contends that jurisdiction is lacking solely due to the Rooker-Feldman doctrine.  Bank One maintains that the instant adversary proceeding is a direct challenge to the state court's entry of judgment in mortgage foreclosure.  See generally, In re Knapper, 407 F.3d 573 (3d Cir. 2005); McAllister v. Allegheny County Family Div., 128 Fed. Appx. 901, 2005 WL 902102 (3d Cir. 2005).[2]

_____

[2]A defendant seeking to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), incorporated by Fed. R. Bankr. P. 7012, is not bound solely by the facts alleged by the plaintiff in her complaint.  See, e.g., Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, (3d Cir. 2003); Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003); E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297, 1302-03 (10th Cir. 2001).  Here, the plaintiff does not contend that the copies of the state court pleading and docket entries attached to defendant's
(continued...)

The so-called <u>Rooker-Feldman</u> doctrine provides that federal courts, other than the United States Supreme Court, lack subject matter jurisdiction to review and reverse judgments rendered by state courts.  <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>see also</u> 28 U.S.C. § 1257 (conferring certiorari power solely upon the United States Supreme Court).[3]  The bases of this doctrine are both prudential and statutory.  Coquillette, <u>et al.</u>, 18 <u>Moore's Federal Practice</u>, § 133.30[3][a] at 133-25 (3d ed. 2006).  Application of this doctrine is limited to federal litigation commenced after the relevant state court adjudication has been entered.  <u>See</u>, <u>e.g.</u>, <u>Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico</u>, 410 F.3d 17, 24 (1st Cir. 2005).

The Third Circuit Court of Appeals recently explained that <u>Rooker-Feldman</u> "'prohibits District Courts [as well as bankruptcy courts] from adjudicating actions in which the relief requested requires determining whether the state court's decision is

---

[2](...continued)

motion to dismiss are inaccurate.  At oral argument, her counsel acknowledged that judgment by default in mortgage foreclosure was entered against her prior to her bankruptcy filing.  Thus, for purposes of this motion, I shall accept as uncontroverted that Bank One obtained a default judgment in mortgage foreclosure against the plaintiff's realty on November 4, 2005.

[3]28 U.S.C. § 1257(a) provides:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

wrong or voiding the state court's ruling.'" In re Knapper, 407 F.3d at 580 (quoting

Walker v. Horn, 385 F.3d 321, 329 (3d Cir. 2004)). As was previously observed by the

Third Circuit in the context of bankruptcy litigation:

> The bankruptcy court is also prohibited from reviewing the
> state court's judgment by the Rooker-Feldman doctrine,
> which prohibits lower federal courts from sitting as effective
> courts of appeal for state court judgments. See, e.g., D.C.
> Court of Appeals v. Feldman, 460 U.S. 462, 476 . . . (1983)
> (citing Rooker v. Fidelity Trust Co., 263 U.S. 413 . . . (1923));
> Besing v. Hawthorne (In re Besing), 981 F.2d 1488, 1496 (5th
> Cir. 1993) ("The Bankruptcy Code was not intended to give
> litigants a second chance to challenge a state court judgment
> nor did it intend for the Bankruptcy Court to serve as an
> appellate court [for state court proceedings]") (quoting In re G
> & R Mfg. Co., 91 B.R. 991, 994 (Bankr. M.D. Fla. 1988)).

In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) (citations omitted). This jurisdictional

limitation is applicable to state court default judgments as well as judgments entered after

a trial on the merits. See, e.g., In re Knapper; Crutchfield v. Countrywide Home Loans,

389 F.3d 1144 (10th Cir. 2004); Salem v. Paroli, 79 Fed. Appx. 455 (2d Cir. 2003).

In Knapper, which involved a debtor's challenge to prepetition default

judgments entered in state court, the Third Circuit Court of Appeals explained the

appropriate scope of the doctrine:

> [A] claim is barred by Rooker-Feldman under two
> circumstances; first, if the federal claim was actually litigated
> in state court prior to the filing of the federal action or,
> second, if the federal claim is inextricably intertwined with
> the state adjudication, meaning that federal relief can only be
> predicated upon a conviction that the state court was wrong.
> In either case, Rooker-Feldman bars a litigant's federal claims
> and divests the District Court of subject matter jurisdiction
> over those claims.

Id., 407 F.3d at 580.[4]

In ITT Corp. v. Intelnet International Corp., 366 F.3d 205 (3d Cir. 2004),

the Court of Appeals explained when a claim has been actually litigated, for purposes of

Rooker-Feldman:

> In Desi's Pizza [Desi's Pizza, Inc. v. City of Wilkes-Barre,
> 321 F.3d 411 (3d Cir. 2003)], we noted the factors for
> determining whether an issue was "actually litigated" by the
> state courts: a plaintiff must present its federal claims to the
> state court, and the state court must decide those claims. . . .
> Ordinarily, it will be more difficult to demonstrate that a
> claim was "actually litigated" than to show that the federal
> claim is "inextricably intertwined" with the state court
> judgment. The former requires that the state court has
> considered and decided precisely the same claim that the
> plaintiff has presented in the federal court.  Conversely, two
> claims may proceed on different theories or involve different
> parties and yet be inextricably intertwined if the District
> Court's judgment would "prevent a state court from enforcing
> its orders." . . .
>
> The actually litigated prong is principally useful where the
> claims before the state and federal courts are in all respects
> identical. In such cases, the straightforward application of the
> "actually litigated" test avoids the more complicated
> "inextricably intertwined" inquiry.

Id. at 211 n.8 (citations omitted).

---

[4]One commentator considers the Rooker-Feldman doctrine "nearly redundant
because most of the actions dismissed for want of jurisdiction also could be resolved by invoking
the claim-or issue-preclusion consequences of the state judgments."  Wright & Miller, 18B Fed.
Prac. & Proc. 2d, § 4469.1 (2006).  Its scope is quite similar to res judicata, albeit with a few
differences, including: Since the doctrine implicates subject matter jurisdiction, its application is
non-waivable and can be considered by a federal court, even sua sponte, at any point in the
litigation; it is based upon federal law and so not defined by state preclusion principles; indeed,
interlocutory judgments may fall within the scope of Rooker-Feldman; the jurisdictional doctrine
appears to apply only to parties in the prior state court litigation and not to those in privity with
those parties; dismissal for lack of jurisdiction is not on the merits; and it only applies to federal
litigation commenced after the state court has ruled.  Coquillette, et al., 18 Moore's Federal
Practice, § 133.30[3][b] at 133-26 to 28 (3d ed. 2006).

In its Knapper decision, the Third Circuit (quoting an earlier decision,

Walker v. Horn, 385 F.3d 321, 330 (3d Cir. 2004)), explained that a federal claim is

inextricably intertwined with a prior state court judgment whenever:

> "(1) the federal court must determine that the state court
> judgment was erroneously entered in order to grant the
> requested relief, or (2) the federal court must take an action
> that would negate the state court's judgment. . . .  In other
> words, Rooker-Feldman does not allow a plaintiff to seek
> relief that, if granted, would prevent a state court from
> enforcing its orders.

In re Knapper, 407 F.3d at 581.

As one commentator observed: "As illustrated by Feldman, an 'inextricably

intertwined' claim . . . would be one not asserted or decided in state court but whose

upholding in federal court would effectively undo the state court's judicial judgment."

Coquillette, et al., 18 Moore's Federal Practice, § 133.30[3]c], at 133-30.9 (3d ed. 2006).

This observation follows from the Supreme Court's Exxon decision:

> The Rooker-Feldman doctrine, we hold today, is confined to
> cases of the kind from which the doctrine acquired its name:
> cases brought by state-court losers complaining of injuries
> caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court
> review and rejection of those judgments.  Rooker-Feldman
> does not otherwise override or supplant preclusion doctrine or
> augment the circumscribed doctrines that allow federal courts
> to stay or dismiss proceedings in deference to state-court
> actions.

Exxon Mobil Corp.  v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005)[5]; see also

Lance v. Dennis, ___ U.S. ___, 126 S. Ct. 1198, 1201 (2006).

　　　　　The Court in Exxon also noted that Rooker-Feldman may not be applicable

when "a federal plaintiff 'present[s] some independent claim, albeit one that denies a

legal conclusion that a state court has reached in a case to which he was a party . . ., then

there is jurisdiction and state law determines whether the defendant prevails under

principles of preclusion.'"  Id., 544 U.S. at 293 (quoting GASH Assocs. v. Rosemont, 995

F.2d 726, 728 (7th Cir. 1993)).  This observation makes important the distinction between

the nature of the claim raised by a plaintiff in subsequent federal litigation and the nature

of the relief sought:

> [T]he "inextricably intertwined" analysis would not apply to a
> separate claim that does not seek review or rejection of a
> state-court judgment.  Such a claim—which essentially
> complains of an injury at the hands of an adverse party, as
> opposed to an injury resulting from a state court's judgment—
> would not be barred by the Rooker-Feldman doctrine.
>
> 　　　　　***
>
> Under this understanding of the role of the "inextricably
> intertwined" analysis, it appears that the *relief sought* (as
> opposed to the *issues raised*) by the federal plaintiff will be
> particularly significant in determining whether the Rooker-
> Feldman doctrine applies.  This is because there would be no
> need to consider whether the *issues raised* in a federal suit are
> "inextricably intertwined" with the state-court judgment
> unless the *relief sought* includes the review and rejection of
> the state-court judgment.

---

[5]To the extent that the plaintiff in this proceeding argues that the Supreme Court's
Exxon Mobil decision narrowed the Third Circuit's interpretation of the scope of Rooker-
Feldman, I note that the Knapper analysis post-dates Exxon Mobil; moreover, the Third Circuit
cited to the Supreme Court's decision, and so was completely aware of the latter's holding.

Coquillette, et al., 18 Moore's Federal Practice, § 133.30[3][c] at 133-30.11 (3d ed. 2006)

(emphasis in original).[6]  Consistent with this approach, the Third Circuit in Stacey v. City

of Hermitage, 178 Fed. Appx. 94 (3d Cir. 2006), concluded that a plaintiff's various

claims arising from the demolition of her home were not barred by Rooker-Feldman

because the relief she sought did not involve the review and potential reversal of the state

court judgment authorizing that demolition.  See also Fontana Empire Center, LLC v.

City of Fontana, 307 F.3d 987 (9th Cir. 2002) (holding that a federal court had

---

[6]The Seventh Circuit in Garry v. Geils, 82 F.3d 1362 (7th Cir. 1996), offered a "rough guide" to the proper application of Rooker-Feldman:

> In Homola and Nesses we offered the following rough guide to determining whether Rooker-Feldman or res judicata should be applied to a federal plaintiff making a claim due to unhappiness with a prior state-court ruling: if the federal plaintiff was the plaintiff in state court, apply res judicata; if the federal plaintiff was the defendant in state court, apply Rooker- Feldman. We stated in Homola:
>
> > A plaintiff who loses and tries again encounters the law of preclusion. The second complaint shows that the plaintiff wants to ignore rather than upset the judgment of the state tribunal. A *defendant* who has lost in state court and sues in federal court does not assert injury at the hands of his adversary; he asserts injury at the hands of the court, and the second suit therefore is an effort to obtain collateral review.  It must be dismissed not on the basis of preclusion but for lack of jurisdiction.  59 F.3d at 650 (emphasis in original).  This distinction based upon state-court status as a plaintiff or defendant is a helpful shorthand, but it was not intended to be and should not be understood as a per se rule.

Id., at 1367 (footnote omitted).

jurisdiction to hear a challenge to a foreclosure sale because the challenge did not seek to

invalidate the state court foreclosure judgment).

B.

With these principles in mind, one can consider the jurisdictional issue

posed by Bank One: Whether a state court judgment in mortgage foreclosure deprives this

federal bankruptcy court of jurisdiction over this adversary proceeding?

Pennsylvania rules of procedure establish a discrete category of civil actions

in mortgage foreclosure.  To commence such an action, a plaintiff must file a complaint

setting forth:

> (1) the parties to and the date of the mortgage, and of any
> assignments, and a statement of the place of record of the
> mortgage and assignments;
>
> (2) a description of the land subject to the mortgage;
>
> (3) the names, addresses and interest of the defendants in the
> action and that the present real owner is unknown if the real
> owner is not made a party;
>
> (4) a specific averment of default;
>
> (5) an itemized statement of the amount due; and
>
> (6) a demand for judgment for the amount due.

Pa. R. Civ. P. 1147.

In reply to such a mortgage foreclosure complaint, Pennsylvania permits

defendants to deny the averments made, to raise affirmative defenses and to assert

counterclaims "which arise[] from the same transaction or occurrence or series of

11

transactions or occurrences from which the plaintiff's cause of action arose."  Pa. R. Civ.

P. 1148.

The Pennsylvania Superior Court has held that a mortgagor cannot raise

federal Truth in Lending violations seeking damages under 15 U.S.C. § 1640, as a setoff,

recoupment or counterclaim, to a mortgage foreclosure action.  See Fleet Real Estate

Funding Corp. v. Smith, 366 Pa. Super. 116, 125-27 (1987); New York Guardian

Mortgage Corp. v. Dietzel, 362 Pa. Super. 426 (1987).  The state appellate court has

explained its holding thusly:

> An action in mortgage foreclosure is strictly an in rem
> proceeding, and the purpose of a judgment in mortgage
> foreclosure is solely to effect a judicial sale of the mortgaged
> property. . . . A judgment in a mortgage foreclosure action is
> not a judgment for money damages and therefore cannot be
> "an action to collect amounts owed" or "an action to collect
> the debt" as required under § 1640(h) and (e) of the
> Truth-In-Lending Act.  Therefore, a set-off for an alleged
> violation of the Truth-In-Lending Act cannot be asserted as a
> counter-claim in a mortgage foreclosure action.

New York Guardian Mortgage Corp. v. Dietzel, 362 Pa. Super. at 431.

Thereafter, state trial courts have declined to consider TILA disclosure

damage claims as either defenses or counterclaims in foreclosure actions.  See, e.g.,

Federal Home Loan Mortgage Corp. v. Pearl, 28 Phila. Co. Rptr. 522 (Pa. C.P., Phila. Co.

1994); Fairway Consumer Discount Co. v. Mulhern, 7 Pa. D. & C. 4th 405, 407 (Pa. C.P.,

Luz. Co. 1990):

> As set forth above, defendants' defense of this claim does not
> attack the existence of the mortgage or that they are in default,
> but rather only challenges the mortgage lender's failure to
> disclose as required by the federal Truth in Lending Act, 15
> U.S.C. §1601 et seq.

In Pennsylvania, mortgagors can bring actions in equity to void mortgages. See, e.g., Thees v. Prudential Insurance Co., 325 Pa. 465 (1937). Similarly, mortgagors can defend a foreclosure action by asserting that the mortgage is void. See Dean Witter Reynolds, Inc. v. Genteel, 346 Pa. Super. 336 (1985). Just recently, the Pennsylvania Superior Court, in Green Tree Consumer Discount Co. v. Newton, 2006 WL 2868312 (Pa. Super. 2006), reversed the ruling of a trial court and held that a mortgagor can properly defend an in rem foreclosure action on the basis that the mortgage was void due to fraud. The appellate court distinguished this defense from its earlier Dietzel holding:

> While it is understandable that Dietzel might be read as the trial judge did, much of the relevant rationale in Dietzel is dicta and, more importantly, it specifically discussed the application of the Truth in Lending Act (TILA), 15 U.S.C. § 1640(e), (h), which is not at issue here. Rather, the Newtons have claimed fraud in the execution of the mortgage agreement. Because this claim is distinguishable from the factual scenario in Dietzel, and the Newtons have alleged enough facts that, if believed, would present a viable defense to the foreclosure, if not void the mortgage completely, summary judgment is not appropriate.

Id., at *1. The mortgagors in Newton were asserting permissible defenses, which if proven, "could relieve them of their obligations under the mortgage." Id., at *2. Thus, the Superior Court determined that the state trial court was obligated to consider those defenses in connection with the merits of the foreclosure action. Conversely, Newton reaffirmed the holding in Dietzel that a mortgagor's claim for damages, setoff or recoupment, based upon the federal Truth in Lending Act, 15 U.S.C. § 1640, could not be considered in the context of a foreclosure lawsuit. Id., at *3.

This distinction in Pennsylvania procedural law—permitting a mortgagor to challenge the validity of the mortgage in a foreclosure action, but not permitting TILA

damage, setoff or recoupment actions—is germane to Bank One's jurisdictional objection in this adversary proceeding.

C.

In counts II and III of her complaint, the plaintiff seeks relief under two different sections of TILA: sections 1635 and 1640.  Complaint, ¶ 45.[7]  Section 1640, which concerns the relief of damages, setoff and recoupment, clearly was not before the state court in Bank One's foreclosure action against the plaintiff; had she raised any claims under section 1640, the state trial court would not have determined those claims. See, e.g., Green Tree Consumer Discount Co. v. Newton.  However, claims under 15 U.S.C. § 1635 involve rescission.  This statutory provision establishes the borrower's right to rescind a loan in certain circumstances, the deadline for exercising that right, as well as the effect of the proper exercise of that right:

> When an obligor exercises his right to rescind under
> subsection (a) of this section, he is not liable for any finance
> or other charge, and any security interest given by the obligor,
> including any such interest arising by operation of law,
> becomes void upon such a rescission. . . .

15 U.S.C. § 1635(b); see generally Handy v. Anchor Mortg. Corp., 464 F.3d 760 (7th Cir. 2006).

---

[7]Because defendant Bank One was not the original lender, the plaintiff also refers to section 1641 of TILA, addressing the liability of assignees for relief afforded borrowers by sections 1635 and 1640.  She also mentions in count III section 1639, which refers to the requisite HOEPA disclosures.  The relief sought in count III, however, incorporates ¶ 45 of the complaint, and so includes sections 1635 and 1640 of TILA.

A mortgage foreclosure action is dependent upon the existence of a valid mortgage. A proper claim that a loan has been rescinded under section 1635 of TILA has the effect of invalidating the mortgage. As just noted by the First Circuit Court of Appeals:

> It would be impossible for Vergara to prevail on his claim that the loan transaction is subject to rescission [under TILA] without flatly contradicting the state court's affirmation of R & G Mortgage's right to foreclose on the encumbrance securing that loan.
>
> ***
>
> The claim here at issue—Vergara's TILA-based claim for rescission—plainly runs afoul of this [preclusion] rule. After all, Vergara cannot successfully prosecute a rescission claim without nullifying R & G Mortgage's court-sanctioned right to foreclose the mortgage.

R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 184, 185 (1st Cir. 2006); see also In re Soto, 221 B.R. 343, 356 n.29 (Bankr. E.D. Pa. 1998).[8]

Accordingly, courts have consistently held that the issue of TILA rescission is "inextricably intertwined" with a prior judgment in mortgage foreclosure. Thus, the Rooker-Feldman doctrine bars a federal court from exercising jurisdiction over a TILA rescission claim first asserted after the entry of a state court foreclosure judgment:

> Unlike the adequacy of notice, the state court did not actually decide whether Mr. Crutchfield had a right to rescission under TILA. Consequently, we must determine whether that claim

---

[8]The First Circuit concluded that a TILA rescission claim was barred by res judicata and did not reach the Rooker-Feldman issue. R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d at 188 n.3. In Soto, Judge Sigmund also addressed claim preclusion. As a federal court must always be concerned at the outset with its subject matter jurisdiction, it is necessary to consider the Rooker-Feldman issue prior to any preclusion challenges. See Long v. Shorebank Development Corp., 182 F.3d 548, 554-55 (7th Cir. 1999) ("Because the Rooker-Feldman doctrine is jurisdictional in nature, its applicability must be determined before considering the defendants' arguments regarding the applicability of res judicata.").

> is inextricably intertwined with the state court judgment. The effect of the state court judgment was to foreclose the mortgage on the home that Mr. Crutchfield inherited from his mother. If he were to receive his requested relief, the district court would issue a declaratory judgment that he had validly rescinded the mortgage and thus removed the lien on the property. Mr. Crutchfield is thus asking a federal court to do precisely what Rooker-Feldman prohibits: to undo the effect of the state court judgment.

Crutchfield v. Countrywide Home Loans, 389 F.3d 1144, 1148 (10th Cir. 2004); see, e.g., Harper v. Chase Manhattan Bank, 138 Fed. Appx. 130, 133 (11th Cir. 2005); Rohr v. Home Loans Corp., 2005 WL 2027684, at *3 (D. Colo. 2005); McMahon v. Washington State Bank, 2005 WL 1648204, at *2 (W.D. Wis. 2005) ("Plaintiff's requested remedy, avoidance of the lien foreclosed in state court, reveals that the injury stems from the foreclosure and the essence of the claim is to overturn that state court judgment."); Thompson v. Ameriquest Mortg. Co., 2003 WL 22012207, at *3 (N.D. Ill. 2003) ("Implicit in the [state court's foreclosure] Judgment was that court's determination that the Mortgage was valid. Plaintiff's [TILA rescission] complaint asks us to draw a different conclusion than that reached by the [state court]. As a consequence, we are without subject matter jurisdiction to hear Plaintiff's claims pursuant to the Rooker-Feldman Doctrine."); see also Harper v. Chase Manhattan Bank, 138 Fed. Appx. 130 (11th Cir. 2005) (claims of TILA, ECOA and FDCPA were jurisdictionally barred where the plaintiff sought an injunction against a state court foreclosure judgment); Postma v. First Federal Savings & Loan, 74 F.3d 160 (8th Cir. 1996) (Rooker-Feldman barred a federal suit raising state and federal claims, including TILA, after a foreclosure sale and judgment); Smith v. Litton Loan Servicing, LP, 2005 WL 289927, at *6-*8 (E.D. Pa. 2005); Eubanks v. Liberty Mortg. Banking Ltd., 976 F. Supp. 171, 174 (E.D.N.Y.

16

1997); In re Holler, 342 B.R. 212, 221 (Bankr. W.D. Pa. 2006) (due to state court

foreclosure judgment, bankruptcy court had no jurisdiction over that portion of the

debtor's objection to mortgagee's proof of claim asserting that the mortgage assignment

was invalid).[9]

The conclusion that a prior state court judgment in foreclosure is

"inextricably intertwined" with a TILA rescission action concerning the loan that gave

rise to the mortgage is also supported by the recent decision in In re Faust, 2006 WL

2801946 (Bankr. E.D. Pa. 2006). In Faust, Bankruptcy Judge Raslavich held that the

---

[9]I have reviewed In re Hodges, 2006 WL 2821482 (Bankr. N.D. Ill. 2006), a
recent bankruptcy court decision holding that the Rooker-Feldman doctrine did not apply to a
bankruptcy adversary proceeding seeking to "rescind [a] mortgage", id., at *1, which proceeding
was commenced after the entry of a foreclosure judgment by default. I find that decision both
unpersuasive and inapposite.

The Hodges court held that the Rooker-Feldman doctrine did not apply to
interlocutory state court judgments and that, under Illinois law, a foreclosure judgment was
interlocutory until the redemption period had concluded, a foreclosure sale had occurred and the
sale had been confirmed. Id., at *4. I will assume arguendo that this is a correct analysis of
Illinois state law.

The notion, however, that Rooker-Feldman does not apply to interlocutory orders
is contrary to Third Circuit authority. Port Authority Police Benevolent Association v. Port
Authority Police Department, 973 F.2d 169, 177-78 (3d Cir. 1992); see, e.g., Federacion de
Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d at 24;
Campbell v. Greisberger, 80 F.3d 703, 707 (2d Cir. 1996); In re 421 Willow Corp., 2003 WL
22318022, at *6 n.6 (E.D. Pa. 2003). Indeed, one court has noted: "Rooker-Feldman is broader
than claim and issue preclusion because it does not depend on a final judgment on the merits."
Charchenko v. City of Stillwater, 47 F.3d 981, 983 n.1 (8th Cir. 1995). The Supreme Court's
Exxon decision did not expressly limit the scope of the jurisdictional doctrine only to final state
court orders. See Coquillette, et al., 18 Moore's Federal Practice, §133.30[3][c][ii] (3d ed.
2006). Thus, I cannot agree that state court interlocutory decrees can be overruled by federal trial
courts. Cf. In re Brown, 951 F.2d 564, (3d Cir. 1991) ("[T]he order of the state court granting
summary judgment on liability was not final for purposes of appeal, but that does not deny it
preclusive effect in the bankruptcy court.").

Furthermore, the Third Circuit has held in Knapper that a default judgment in
mortgage foreclosure, prior to any sale, was sufficient to trigger application of Rooker-Feldman.
Pennsylvania appellate courts hear appeals from judgments in mortgage foreclosure before any
sale without denoting those appeals as interlocutory. See, e.g., Green Tree Consumer Discount
Co. v. Newton. Thus, a judgment in foreclosure is not interlocutory under Pennsylvania law.

17

debtor's rescission claim was barred by <u>Rooker-Feldman</u>. <u>Id.</u>, at *3 ("Beginning with

Count I (rescission under UDAP), it is indisputable that rescinding the loan would negate

the state court judgment. Thus, the Court must find that the hearing of the UDAP claim

violates <u>Rooker-Feldman</u>. This Count, therefore, must be dismissed.").

Indeed, the Third Circuit, in a recent non-precedential decision involving a

homeowner's attempt to bring a non-TILA rescission action in federal district court after

the entry of a state court foreclosure judgment, held that the district court had no

jurisdiction to resolve that claim as the issue of rescission was "inextricably intertwined"

with the state court judgment in foreclosure:

> In this case, the Superior Court ordered judgment in favor of
> appellee based on Ayres-Fountain's default of the terms of the
> note and mortgage. In her complaint filed in the District
> Court, Ayres-Fountain sought rescission of the mortgage and
> damages. Thus, the relief she seeks would invalidate the
> Superior Court's judgment against her.

<u>Ayres-Fountain v. Eastern Savings Bank</u>, 153 Fed. Appx. 91, 92 (3d Cir. 2005).

In December 2000, the plaintiff entered into a loan transaction resulting in a

mortgage on real property. In April 2003, she gave the mortgagee notice of her election

to rescind the loan and void the mortgage. In November 2005, the mortgagee filed a

foreclosure action and judgment was entered in its favor. State law permitted her to raise

the voidness of the mortgage as a defense to foreclosure.

In this adversary proceeding filed in 2006, the plaintiff seeks a

determination in this federal court that the loan was rescinded and the mortgage has been

"terminated." Complaint, ¶ 45. Clearly, a determination by me that the 2000 loan

transaction was validly rescinded in April 2003 would have the effect of reversing the

state court foreclosure judgment and rendering it unenforceable. Therefore, the rescission

18

relief now sought by the plaintiff is inextricably intertwined with the state court

foreclosure judgment.[10]  As it is outside the scope of this court's jurisdiction to grant such

relief, the rescission relief components of counts II and III must be stricken.[11]


D.


Insofar as Bank One also contends that there is a jurisdictional bar to

considering the plaintiff's TILA, HOEPA, HIFA and UTPCPL damage and recoupment

claims, I disagree.  Granting such relief is not inextricably intertwined with the

---

[10]I do not now decide whether a similar outcome would be required had the plaintiff not given notice of rescission prior to the foreclosure lawsuit, but still had the right to rescind.  15 U.S.C. § 1635(f) (2005) and 12 C.F.R. § 226.23 provide that a borrower's right to rescind a loan expires not later than three years after the loan agreement was consummated (unless some federal governmental agency action is involved) or upon sale of the realty.  See generally Beach v. Ocwen Federal Bank, 523 U.S. 410 (1998).

[11]Defendant Bank One has sought dismissal under Fed. R. Bankr. P. 7012, which rule incorporates Fed. R. Civ. P. 12(b)-(h) in adversary proceedings.  The complaint in this proceeding does not contain a separate rescission count.  Instead, the plaintiff includes rescission and termination of the mortgage as part of the relief she seeks in counts II and III.  As will be discussed, this court has jurisdiction over, and the plaintiff states a cause of action for, recoupment damages, which are also raised as components of counts II and III.

Although Bank One refers to Rules 12(b)(1) and 12(b)(6) in support of dismissal, it would be inappropriate to dismiss either counts II or III since, if the plaintiff proves her allegations, she may be entitled to some relief.  See generally Babcock v. Frank, 729 F. Supp. 279, 286 (S.D.N.Y. 1990).  However, Rule 12(f), incorporated by Bankruptcy Rule 7012, permits a court to strike "from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Courts have used Rule 12(f) to strike portions of complaints that seek "relief that would not be recoverable under the applicable law."  Coquillette, et al., 2 Moore's Federal Practice, § 12.37[3] at 12-100.3 (3d ed. 2006); see, e.g., GE Healthcare Financial Services v. Cardiology and Vascular Associates, 2006 WL 950268, at *4 (E.D. Mich. 2006); Capital Funding VI, LP v. Chase Manhattan Bank USA, N.A., 2003 WL 21672202, at *7 (E.D. Pa. 2003); Dixon v. Boscov's Inc., 2002 WL 1740583, at *4 (E.D. Pa. 2002).  When Rule 12(f) is so used, it fulfills its purpose: "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).

foreclosure judgment.  See Rohr v. Home Loans Corp., 2005 WL 2027684, at *3 (D.

Colo. 2005) (granting dismissal under Rooker-Feldman to "the extent the plaintiff seeks

rescission of the mortgage loan" but not as to TILA damage claims).  The amount due the

mortgagee can be adjusted by this court without affecting the validity of the mortgage

itself, nor the right of the mortgagee to foreclose upon its judgment.  In the same manner

that the amount of the foreclosure judgment can be adjusted upward, prior to sale, to

include post-judgment interest and court costs—referred to in state-court parlance as the

"reassessment of damages"—it can be adjusted downward for post-judgment credits

owing to the mortgagor.

Furthermore, the plaintiff is not alleging damages based upon the state court

foreclosure judgment.  Compare Taylor v. Federal Nat. Mortg. Ass'n, 374 F.3d 529 (7th

Cir. 2004) (federal ECOA claim was "inextricably intertwined" with state court

foreclosure judgment when the damages sought were based upon the value of the realty

foreclosed upon); Garry v. Geils, 82 F.3d 1362 (7th Cir. 1996) (damage claim based upon

the entry of state court judgment was barred by Rooker-Feldman along with request for

injunctive relief against enforcement of the judgment).  The conduct of the defendants

that plaintiff complains of in this proceeding arose from the loan closing in 2000, as well

as from Bank One's failure to rescind the loan in 2003, and so pre-dates the foreclosure

judgment.  See generally Long v. Shorebank Development Corp., 182 F.3d 548, 555-57

(7th Cir. 1999).

Indeed, the Third Circuit reached an analogous conclusion in Turner v.

Crawford Square Apartments III, L.P., 449 F.3d 542 (3d Cir. 2006), holding that a state

court judgment in eviction against a tenant did not jurisdictionally bar a federal district

20

court from later hearing the tenant's Fair Housing Act claims against the landlord.  42

U.S.C. § 3613 authorizes damage claims as well as injunction claims for alleged Fair

Housing Act violations.  (The Third Circuit did not refer to any attempt by the plaintiff to

enjoin her eviction.)

   Finally, to the extent that a state trial court is prohibited from considering

recoupment and damage counterclaims arising from consumer protection statutes such as

TILA, those claims cannot be inextricably intertwined with the state court judgment.

Thus, a federal court cannot be jurisdictionally barred from hearing such claims.  Long v.

Shorebank Development Corp., 182 F.3d at 557-58:

> Notwithstanding these determinations regarding Long's §
> 1983 claim (and even her FDCPA claims for that matter), we
> conclude that one critical distinction between cases in which
> we have found Rooker-Feldman to be applicable and the
> present case exists rendering Rooker-Feldman inapplicable to
> the claims contained in Long's complaint.  In the proceedings
> before the state court that ultimately culminated in her
> eviction, Long was effectively precluded from raising the
> claims she presented in her suit before the district court. Thus,
> we cannot say that her claims are bound up with the eviction
> order.
>
> Because the Rooker-Feldman doctrine extends beyond issues
> actually raised in state court to issues that are inextricably
> intertwined with such issues, a plaintiff "failing to raise his
> claims in state court may forfeit his right to obtain review of
> the state court decision in any federal court."  Feldman, 460
> U.S. at 482 n. 16, 103 S. Ct. 1303.  Nevertheless, an issue
> cannot be inextricably intertwined with a state court judgment
> if the plaintiff did not have a reasonable opportunity to raise
> the issue in state court proceedings.  Absent such an
> opportunity, it is impossible to conclude that the issue was
> inextricably intertwined with the state court judgment.

See, e.g., In re Faust, 2006 WL 2801946, at *3.

Therefore, only the rescission relief raised by the plaintiff, which if granted would invalidate the mortgage upheld by the state court in its foreclosure judgment, but not the damage or recoupment claims, runs afoul of the <u>Rooker-Feldman</u> doctrine and such relief must be stricken from the complaint for that reason.

III.

In addition to seeking dismissal under Rule 12(b)(1), Bank One also contends that the plaintiff has failed to set forth any claims as a matter of law under Rule 12(b)(6).  In so contending, it raises various affirmative defenses: res judicata, collateral estoppel and the statute of limitations.

Generally, affirmative defenses cannot be used to support dismissal under Rule 12(b)(6).  Rather, defendants can only assert affirmative defenses at trial or, if no material facts are in dispute, in connection with summary judgment.  <u>See</u>, <u>e.g.</u>, <u>Resolution Trust Corp. v. Fiala</u>, 870 F. Supp. 962, 971 (E.D. Mo. 1994).  There is, however, an exception to this constraint.  An affirmative defense can be considered in the context of a motion to dismiss when its validity is clear from the facts asserted by the plaintiff in her complaint or otherwise not subject to dispute.  <u>See</u> <u>In re Tower Air, Inc.</u>, 416 F.3d 229, 238 (3d Cir. 2005); <u>Fleet Nat. Bank v. Boyle</u>, 2005 WL 2455673, at *16 (E.D. Pa. 2005); <u>see</u> <u>generally</u> <u>ALA, Inc. v. CCAIR, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense like the statute of frauds appears on its face.").

As Judge Raslavich recently explained in discussing defenses similar to those raised in this proceeding:

> Alternatively, the movants argue that under preclusionary rules of procedure, the counts must be dismissed under F.R.C.P. 12(b)(6). They rely here on res judicata, collateral estoppel, and the statute of limitations. Although all three theories constitute affirmative defenses, each may be raised on a motion to dismiss for failure to state a claim if the defect appears on the face of the pleading. See Brody v. Hankin, 299 F. Supp. 2d 454, 458 (E.D. Pa. 2004), rev'd on other grounds, 145 Fed. Appx. 768 (3d Cir. 2005) ("Although it is an affirmative defense, res judicata may be raised in a Rule 12(b)(6) motion and such a motion is particularly appropriate if the defense is apparent on the face of the complaint.") (citing Rycoline Prod's. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)); see also W.G. Nichols, Inc. v. Ferguson, 2003 WL 22158794 *2 n. 5 (E.D. Pa.) ("Collateral estoppel may be raised upon a Rule 12(b)(6) motion if the facts are admitted, uncontroverted or conclusively established so that nothing further can be developed by a trial of the issue."); and see also Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt, LP, 435 F.3d 396, 400 n.14 (3d Cir. 2006) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)"); Wright and Miller, 5B Federal Practice and Procedure Civil 3d § 1357 at 729 (2006).

In re Faust, 2006 WL 2801946, at *3 (footnote omitted); see also Iacaponi v. New Amsterdam Casualty Co., 379 F.2d 311, 312 (3d Cir. 1967), cert. denied, 389 U.S. 1054 (1968); Zhang v. Haven-Scott Associates, Inc., 1996 WL 355344, at *8 (E.D. Pa. 1996); Gundlach v. Swain, 1996 WL 24748 at *2 (E.D. Pa. 1996).

In this adversary proceeding, defendant Bank One's affirmative defenses are based upon the allegations made in plaintiff's complaint, or are based upon two facts the validity of which the plaintiff does not dispute: the entry of a prepetition judgment in

foreclosure by default, mentioned above; and (as is clear from this court's docket entries) the existence of two prior chapter 13 cases filed by the plaintiff, docketed at Bankr. Nos. 04-33514 and 06-10490.  The former case was filed on October 5, 2004 and dismissed on February 1, 2005 due to the debtor's failure to pay all required filing fees. The latter was filed on February 6, 2006 and dismissed on March 24, 2006 due to her failure to file all required bankruptcy documents.

In neither prior case do the docket entries reflect any litigation between the debtor and Bank One—such as <u>via</u> complaint, motion or objection to claim.[12]  Nor is there any indication that the debtor proposed a chapter 13 plan that was confirmed.[13]

A.

While federal common law has developed its own set of preclusion principles, if the decision allegedly precluding a later action was issued by a state court, then the federal courts must apply the preclusion principles developed by that state. <u>Gregory v. Chehi</u>, 843 F.2d 111, 116 (3d Cir. 1988); <u>see</u> <u>Richard Johnson Honey Shoe Shine Express Services v. U.S. Equity Realty, Inc.</u>, 125 F. Supp. 2d 695, 699 (E.D. Pa. 2000) (same); <u>In re Marks</u>, 192 B.R. at 383 (same).  This derives from the Full Faith and Credit statute, 28 U.S.C. § 1738, requiring a court to give the same effect to a judgment

---

[12]Indeed, in the 2004 case, there is no record of Bank One having even filed a proof of claim.

[13]In both the 2004 and earlier 2006 chapter 13 cases, court records reflect that the debtor did propose chapter 13 plans that identified Bank One as holding a disputed secured claim "because loan rescinded."  Dismissal in both instances occurred prior to confirmation.

24

that the issuing state would.  <u>Gregory v. Chehi</u>, 843 F.2d at 116 (citing <u>Davis v. United
States Steel Supply</u>, 688 F.2d 166, 170 (3d Cir. 1982)); <u>In re Marks</u>, 192 B.R. 379, 384
(3d Cir. 1996).

      Some courts have held that a state court order of foreclosure may preclude
the defendant/mortgagor from later asserting against a mortgagee a complaint in federal
court raising Truth in Lending violations, be the mortgagor seeking statutory damages or
rescission.  <u>See</u>, <u>e.g.</u>, <u>Albano v. Norwest Financial Hawaii, Inc.</u>, 244 F.3d 1061 (9th Cir.
2001); <u>Thomas v. General Electric Credit Corp.</u>, 780 F.2d 1123 (4th Cir. 1986).
Defendant Bank One posits a similar position as to all three counts of the present
adversary proceeding based upon the state court foreclosure judgment entered by default
against the plaintiff.

      The relevant query is whether Pennsylvania law would render the default
foreclosure judgment preclusive in a second state court lawsuit.  If so, then a similar
result would apply in this federal court.

      Pennsylvania courts hold that issue preclusion (or collateral estoppel)
prevents relitigation of issues previously determined in a court of competent jurisdiction,
<u>see</u> <u>Muse v. Cermak</u>, 428 Pa. Super. 199, 203 (1993), and applies in the following
circumstances:

> For similar reasons, the present action is not barred by
> principles of collateral estoppel.  This principle, which is
> sometimes referred to as issue preclusion, prevents an issue of
> law or fact from being relitigated after it has been once
> litigated and finally adjudicated in a court of competent
> jurisdiction . . . .  The doctrine applies when (1) an issue is
> identical to one which was presented in a prior case; (2) there
> has been a final judgment on the merits of the issue in the
> prior case; (3) the party against whom collateral estoppel is
> asserted was a party in, or in privity with a party in, the prior

25

> action; (4) the party against whom the doctrine is asserted, or
> one in privity with the party, had a full and fair opportunity to
> litigate the issue in the prior proceeding; and (5) the
> determination in the prior proceeding was essential to the
> judgment . . . .  Collateral estoppel applies only to issues
> which have been actually litigated in a prior action.

Hopewell Estates, Inc. v. Kent, 435 Pa. Super. 471, 478 (1994) (citations omitted).

Pennsylvania's courts have long held that a judgment entered by default has

no collateral estoppel effect, since no issues were actually litigated.  See, e.g., In re

Graves, 33 F.3d 242, 248 (3d Cir. 1994) ("[D]efault judgments are not given preclusive

effect in Pennsylvania's courts."); McGill v. Southwark Realty Co., 828 A.2d 430, 435

(Pa. Cmwlth. 2003) ("A default judgment lacks the requisite element that it be 'actually

litigated.' A default judgment is not entitled to the preclusive effect of collateral

estoppel[.]"); Martin v. Poole, 232 Pa. Super. 263, 271-72 (1975) (same).

Since Pennsylvania would not grant any collateral estoppel effect to the

foreclosure judgment entered by default against the plaintiff, this court will not do so

either.  Therefore none of the claims raised by the plaintiff over which this court has

subject matter jurisdiction are collaterally estopped due to the prepetition foreclosure

judgment.  See generally Matter of McMillan, 579 F.2d 289 (3d Cir. 1978); In re

Galloway, 220 B.R. 236, 243 (Bankr. E.D. Pa. 1998).

In Pennsylvania "res judicata, also known as claim preclusion, provides that

where there is a final judgment on the merits, future litigation between the parties on the

same cause of action is prohibited."  McGill v. Southwark Realty Co., 828 A.2d at 435.

State courts define the elements of claim preclusion in these terms:

> Invocation of the doctrine of res judicata (claim preclusion)
> requires that both the former and latter suits possess the
> following common elements:

> 1. identity in the thing sued upon;
> 2. identity in the cause of action;
> 3. identity of persons and parties to the action; and
> 4. identity of the capacity of the parties suing or being sued.

Gatling v. Eaton Corp., 2002 Pa. Super. 276, 807 A.2d 283, 287 ( 2002); see also Wexler

v. Citibank, 1994 WL 580191, at *5 (E.D. Pa. 1994).

In contrast with issue preclusion, claim preclusion does not require actual

litigation of the merits of the claim.  Therefore, a judgment by default may result in a

determination of res judicata if all the elements of that principle have been established.

As explained by the Pennsylvania Supreme Court:

> It is axiomatic that a judgment on the title to property is conclusive between the parties to the action in subsequent litigation involving the same property where the question was in issue and was either expressly or by necessary implication decided . . . .  Where an issue is pleaded in a complaint and is necessary to the judgment of a court, we will accord no less conclusiveness to a determination of the issue of title to property effected by a default judgment.  This Court has long held that a judgment by default is res judicata and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned.

Zimmer v. Zimmer, 457 Pa. 488, 490-91 (1974) (citations omitted); accord, e.g., Fox v.

Gabler, 534 Pa. 185, 189 (1993):

> Initially we note, where a court imposes a judgment by default against a defendant as a sanction for failure to respond adequately to discovery requests, it is acting well within its discretion and the latitude given it by our Rules of Civil Procedure to enter "a judgment by default against the disobedient party."  Pa. Rule of Civil Procedure 4019(c)(3). Once all direct appeals are exhausted from the entry of such a judgment, we long ago concluded that the judgment by default is res judicata and quite as conclusive as one rendered

27

on a verdict after litigation insofar as a defaulting defendant is
concerned.

See also Morgan Guaranty Trust Co. of New York v. Staats, 428 Pa. Super. 479, 492

(1993); Wexler v. Citibank, 1994 WL 580191, at *5 (state court default judgment in

mortgage foreclosure barred a federal court challenge to the mortgage).

In Pennsylvania, the invocation of res judicata "applies not only to claims

actually litigated, but also to claims which could have been litigated during the first

proceeding if they were part of the same cause of action." R/S Financial Corp. v.

Kovalchick, 552 Pa. 584, 588 (1998); see, e.g., Balent v. City of Wilkes-Barre, 542 Pa.

555, 564 (1995). Conversely, claim preclusion is not applied to claims that could not

have been previously litigated. See Dithridge House Ass'n v. Com., Dept. of

Environmental Resources, 116 Pa. Cmwlth. 24, 33 (1988).

I previously discussed the procedural limitations imposed by Pennsylvania

law regarding foreclosure actions. While plaintiff could have litigated her claim that the

mortgage loan was previously rescinded, she could not have litigated her claims for

damages and recoupment under federal or state consumer protection statutes.

Accordingly, were this court to have subject matter jurisdiction over plaintiff's rescission

claims, they would be barred by res judicata. See Turner v. Crawford Square Apartments

III, L.P., 449 F.3d at 548-51 (Fair Housing Act claims were precluded by res judicata

because they could have been raised in state court eviction lawsuit); R.G. Financial Corp.

v. Vergara-Nunez (rescission barred by res judicata); Ayres-Fountain v. Eastern Savings

Bank, 153 Fed. Appx. at 93 (res judicata barred rescission lawsuit after entry of

foreclosure judgment); Dauphin Deposit Bank and Trust Co. v. Tenny, 355 Pa. Super.

338, 343 (1986) (foreclosure judgment, wherein the mortgagor failed to challenge the

validity of the mortgage, precluded a subsequent claim that the mortgage had been
forged).

   In contrast, her claims for damages, setoff and recoupment in counts I, II
and III are not so precluded, as they could not have been litigated in the prior state court
lawsuit.  See In re Faust, 2006 WL 2801946, at *4-*5; In re Soto, 221 B.R. at 356; In re
Jones, 122 B.R. 246, 251 n.4  (W.D. Pa. 1990) ("Jones' TILA claim is not barred by res
judicata because state law prohibits assertion of such a claim as a defense to a foreclosure
action.").


IV.


   Defendant Bank One also maintains a similar preclusion position arising
from the debtor's prior bankruptcy filings.  It contends that she could have and should
have litigated all the claims she now raises in the two previous bankruptcy cases that were
dismissed.

   Federal res judicata, or claim preclusion, "applies to claims that 'were or
could have been raised' in a prior action involving the 'parties or their privies' when the
prior action had been resolved by 'a final judgment on the merits.'" In re Graham, 973
F.2d 1089, 1093 (3d Cir. 1992) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)); see
also Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991) ("Federal law of
claim preclusion requires a defendant to demonstrate that there has been (1) a final
judgment on the merits in a prior suit involving (2) the same parties or their privies and
(3) a subsequent suit based on the same cause of action.").  "Claim preclusion thus bars

29

relitigation of any claim that could have been raised in the prior action even if it was not so raised." In re Graham, 973 F.2d at 1093. Further, "[a]pplication of the principles of claim preclusion 'is not altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.'" Berwind Corp. v. Apfel, 94 F. Supp. 2d 597, 609 (E.D. Pa. 2000) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).

Insofar as federal judgments are concerned, "[i]ssue preclusion applies when (1) the issue sought to be precluded (is) the same as that involved in the prior action; (2) that issue (was) actually litigated; (3) it (was) determined by a final and valid judgment; and (4) the determination (was) essential to the prior judgment." In re Graham, 973 F.2d at 1097 (citing In re Braen, 900 F.2d 621, 628-29 n. 5 (3d Cir. 1990), and quoting In re Ross, 602 F.2d 604, 608 (3d Cir. 1979)). In addition, "the party against whom the doctrine is invoked [must have] had a full and fair opportunity to litigate the issue in the previous suit." Berwind Corp. v. Apfel, 94 F. Supp. 2d at 611.

Clearly federal issue preclusion is not germane to this proceeding, as the plaintiff's claims were never raised nor adjudicated in the two prior cases. I reach a similar conclusion regarding claim preclusion.

Fed. R. Civ. P. 41(b) provides:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

30

Accordingly, the involuntary dismissal of a civil action can have res judicata effect, unless the dismissal is for reasons specified in the procedural rule as an exception, or the court orders otherwise.  See, e.g., In re Schimmels, 127 F.3d 875, 884 (9th Cir. 1997) ("An involuntary dismissal generally acts as a judgment on the merits for the purposes of res judicata, regardless of whether the dismissal results from procedural error or from the court's considered examination of the plaintiff's substantive claims.").

Fed. R. Civ. P. 41(a) addresses voluntary dismissals.  When a case is voluntarily dismissed by order of the court, "[u]nless otherwise specified in the order, a dismissal . . . is without prejudice."  There is no res judicata effect to a voluntary dismissal without prejudice.  See Plumberman, Inc. v. Urban Systems Development Corp., 605 F.2d 161, 162 (5th Cir. 1979) ("Because the order did not otherwise specify, the dismissal is without prejudice. Consequently it can have no res judicata effect.").  Moreover, the effect of such a dismissal is to leave the parties in the same position as if the litigation had never been filed:

> Of course, it is well settled that "[t]he effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought." In re Piper Aircraft Distribution System Antitrust Litigation, 551 F.2d 213, 219 (8th Cir. 1977).  This means that the dismissal "carries down with it previous proceedings and orders in the action, and all pleadings, both of plaintiff and defendant, and all issues, with respect to plaintiff's claim." Bryan v. Smith, 174 F.2d at 214, quoting 27 C.J.S. Dismissal and Nonsuit, § 39.  In effect, then, the doctrines of collateral estoppel and res judicata are no longer available to the court's previous opinions and orders in Machinists.

National R.R. Passenger Corp. v. International Ass'n of Machinists and Aerospace Workers, 915 F.2d 43, 48 (1st Cir. 1990) (footnote omitted).

31

The plaintiff's two prior bankruptcy cases were involuntarily dismissed.

Section 349 of the Bankruptcy Code governs the effect of such dismissals. The statute

provides:

> a) Unless the court, for cause, orders otherwise, the dismissal
> of a case under this title does not bar the discharge, in a later
> case under this title, of debts that were dischargeable in the
> case dismissed; nor does the dismissal of a case under this
> title prejudice the debtor with regard to the filing of a
> subsequent petition under this title, except as provided in
> section 109(g) of this title.
>
> (b) Unless the court, for cause, orders otherwise, a dismissal
> of a case other than under section 742 of this title--
>
> (1) reinstates–
>
>> (A) any proceeding or custodianship superseded
>> under section 543 of this title;
>>
>> (B) any transfer avoided under section 522, 544,
>> 545, 547, 548, 549, or 724(a) of this title, or
>> preserved under section 510(c)(2), 522(i)(2), or
>> 551 of this title; and
>>
>> (C) any lien voided under section 506(d) of this
>> title;
>
> (2) vacates any order, judgment, or transfer ordered, under
> section 522(i)(1), 542, 550, or 553 of this title; and
>
> (3) revests the property of the estate in the entity in which
> such property was vested immediately before the
> commencement of the case under this title.

11 U.S.C. § 349.

The legislative history of section 349 explains: "The basic purpose of the

subsection [349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all

property rights to the position in which they were found at the commencement of the case.

This does not necessarily encompass undoing sales of property from the estate to a good

faith purchaser." H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977). Following this

legislative background, bankruptcy courts have observed:

> The general idea behind § 349 is that the dismissal of a
> bankruptcy case should re-establish the rights of the parties as
> they existed when the petition was filed. . . . Indeed, unless
> the court indicates otherwise, the general effect of an order of
> dismissal is to "restore the status quo ante;" it is as if the
> bankruptcy petition had never been filed.

In re Derrick, 190 B.R. 346, 350 (Bankr. W.D. Wis. 1995) (citations omitted); see, e.g., In

re Serrato, 214 B.R. 219, 227 (Bankr. N.D. Cal. 1997); In re Lewis & Coulter, Inc., 159

B.R. 188, 190 (Bankr. W.D. Pa. 1993).

In this proceeding, both prior bankruptcy cases filed by the instant plaintiff

were dismissed by court order, which orders did not provide for dismissal with prejudice.

Therefore, any claims or causes of action then held by the debtor reverted to her upon

dismissal, as if the bankruptcy cases had never been filed.[14]  Similarly, creditors were free

---

[14]I find defendant's citation to Baldwin v. McCalla, Raymer, Padrick, Cobb,
Nichols & Clark, L.L.C., 1999 WL 284788 (N.D. Ill. 1999) inappposite. Baldwin held that a
former chapter 13 debtor cannot raise a claim under the Fair Debt Collection Practices Act,
which claim is based upon aspects of the creditor's proof of claim filed in the dismissed
bankruptcy case, where the debtor had a binding confirmed 13 plan and never objected to that
creditor's proof of claim. Here, the plaintiff's prior two cases were dismissed before
confirmation, and her proposed plans made reference to her rescission claim.
    In addition, the other decisions cited by the defendant as supportive of its
preclusion contention are also factually inapposite.
    In Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525 (9th Cir. 1998), the
plaintiff was a former chapter 7 debtor who was attempting to sue a former creditor for tort and
breach of contract. In deciding that the plaintiff's claims were barred by res judicata, the Ninth
Circuit emphasized the failure of the plaintiff to object to the defendant's proof of claim in his
prior chapter 7 case, that the plaintiff had received a chapter 7 discharge, and that the
defendant/secured creditor had successfully moved for relief from the bankruptcy stay and had
foreclosed on the realty. Id., at 528. Thus, this decision did not involve a chapter 13 debtor
whose case was dismissed prior to confirmation within months after its filing.
    Furthermore, in precluding the plaintiff from prosecuting his civil action, the
Siegel court was concerned that the former debtor was attempting unfairly to retain the tort and

(continued...)

to raise all claims against her in accordance with relevant non-bankruptcy law, as Bank

One did.

      Accordingly, the dismissal of the plaintiff's prior bankruptcy cases were not

final orders adjudicating the merits of her claims against Bank One in this adversary

---

[14](...continued)
contract claims for himself, instead of allowing the proceeds of those claims to be paid to the
chapter 7 bankruptcy estate:

> His failure to object and his choosing to file this action even before
> his bankruptcy closed was an interesting tactic by which he hoped
> to accomplish a discharge of his obligations to Freddie Mac (and
> others), while keeping his own claims against it.  Interesting but
> ineffective.

Id., at 531.  (In this circuit, judicial estoppel, rather than res judicata, has been used to address the
same concern.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414 (3d Cir.
1988)).

  Matter of Baudoin, 981 F.2d 736, 737 (5th Cir. 1993), also cited by Bank One,
addressed claim preclusion in these circumstances:

> At issue is whether Chapter 7 debtors may, three years after
> discharge, bring a lender liability action in state court against their
> creditor which, inter alia, bid in its mortgages to purchase the
> debtors' property sold during their personal bankruptcies in
> liquidation of their estate, and filed a proof of claim and received
> partial payment in the bankruptcy for the debtors' wholly-owned
> corporation.  Because we hold that the lender liability claim would
> have been a "core proceeding" in the earlier bankruptcy actions,
> the state action is barred by res judicata.

      Finally, Giles World Marketing, Inc. v. Boekamp Mfg., Inc., 787 F.2d 746 (1st
Cir. 1986), merely concluded that an order of the bankruptcy court, which order permitted a
creditor to amend an informal proof of claim after confirmation of a chapter 11 plan, was
interlocutory and so not appealable.

proceeding, as those claims had neither been raised nor been determined in the dismissed

bankruptcy cases.[15]  See In re Walker, 232 B.R. 725, 731 (Bankr. N.D. Ill. 1999).[16]


V.


The final affirmative defense now raised by Bank One concerns the statute

of limitations.  The defendant argues that the plaintiff's "claims for money damages under

TILA are time-barred."  Defendant's Memorandum at 15.

Technically, an assertion of the statute of limitations, or statute of repose, is

an affirmative defense to be raised in a response to the complaint.  See Fed. R. Bankr. P.

7008 (incorporating, inter alia Fed. R. Civ. P. 8 (c)); Robinson v. Johnson, 313 F.3d 128,

135 (3d Cir. 2002), cert. denied, 540 U.S. 826 (2003); Stirchak v. Shiley, 1996 WL

166958, at *1 (N.D. Ill. 1996).  Modern federal pleading practice in this circuit, however,

accepts that a defendant's limitations or repose defense can be addressed in some

circumstances by a Rule 12(b)(6) motion to dismiss, rather than by a motion for judgment

on the pleadings under Rule 12(c) (raised after defendant files its answers asserting this

affirmative defense).  See Flight Systems, Inc. v. Electronic Data Systems Corp., 112 F.3d

124, 127 (3d Cir. 1997) ("On a Rule 12(b)(6) motion, an affirmative defense, such as the

---

[15]Thus, I need not decide the effect of a section 349 dismissal upon a prior, final
bankruptcy court adjudication on the merits of an adversary proceeding, contested matter or
claims objection.  Compare In re Ramirez, 283 B.R. 156 (Bankr. S.D.N.Y. 2002), with In re
Mirzai, 271 B.R. 647 (C.D. Cal. 2001).

[16]To the extent Walker holds that a foreclosure judgment is not res judicata on a
later TILA rescission claim because under Illinois law such a judgment is not a final order,
Pennsylvania law differs.

statute of frauds defense raised by EDS, is appropriately considered only if it presents an

insuperable barrier to recovery by the plaintiff.").

> As explained by the Third Circuit Court of Appeals:
>
> Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer.  Rule 12(b) states that "[e]very defense . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion. . . ."  The defenses listed in Rule 12(b) do not include limitations defenses.  Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion.  However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975).  "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d at 135 (footnote omitted); see, e.g., In re Coastal Group,

Inc., 13 F.3d 81, 83 (3d Cir. 1994) (limitations issue raised and considered by a motion to

dismiss under Fed. R. Bankr. P. 7012(b));  Coquillette, et al., 2 Moore's Federal Practice,

¶ 12.34[4][b] at 12-74 (3d ed. 2006) ("Dismissal under Rule 12(b)(6) may also be

appropriate when a successful affirmative defense or other bar to relief appears on the

face of the complaint, such as . . . the statute of limitations.") (footnote omitted).

However, while a limitations defense may be asserted in the context of a

motion to dismiss, the validity of that defense must be clear from the complaint itself.

Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 591 (9th Cir.), cert.

denied, 498 U.S. 824 (1990):

> [W]here the issue of limitations requires determination of
> when a claim begins to accrue, the complaint should be
> dismissed only if the evidence is so clear that there is no
> genuine factual issue and the determination can be made as a
> matter of law.

Accord Askanase v. Fatjo, 1993 U.S. Dist. Lexis 19392, at *11 (S.D. Tex. June 16, 1993);

see Continental Collieries v. Shober, 130 F.2d 631, 635-36 (3d Cir. 1942) (statute of

frauds defense was not established on the face of the complaint).

In this proceeding, the complaint alleges the date of the loan, December

2000, the date that plaintiff's counsel sent a letter to Bank One electing rescission, April

2003, and the date this lawsuit commenced, May 2006.  Bank One's instant motion to

dismiss and the plaintiff's response thereto rely solely upon these dates.  Thus, the

plaintiff does not suggest that this limitations or repose affirmative defense cannot be

resolved on the basis of a motion to dismiss.

In general, damage claims under TILA (15 U.S.C. § 1640(a)) and HOEPA

(15 U.S.C. § 1639) are governed by the one-year limitations period found in section

1640(e).[17]  See, e.g., Smith v. EquipCredit Corp., 2002 WL 32349873, *3 (E.D. Pa.

2002).  The limitations period commences when the violation occurs.

 The plaintiff here raises two potentially independent damage claims.  The

first occurred when the loan closed in December 2000 and the original disclosures were

made to her.  The second arguably occurred in April 2003, when she gave notice of

rescission and Bank One declined to act.  See, e.g., Belini v. Washington Mut. Bank, FA,

412 F.3d 17, 24-26 (1st Cir. 2005).  Clearly, the one-year limitations period in either

instance expired prior to her commencement of this adversary proceeding on August 1,

2006.  Indeed, it had expired prior to her commencement of this bankruptcy case on May

2, 2006.

 In Ramadan v. Chase Manhattan Corp., 156 F.3d 499 (3d Cir. 1998), the

Court of Appeals explained that the limitations period found in section 1640(e) was

subject to equitable tolling in appropriate circumstances.  The possibility that equitable

tolling might apply could defeat a defendant's motion to dismiss on limitations grounds.

---

[17]This subsection states:

 Any action under this section may be brought in any United States
district court, or in any other court of competent jurisdiction,
within one year from the date of the occurrence of the violation.
This subsection does not bar a person from asserting a violation of
this subchapter in an action to collect the debt which was brought
more than one year from the date of the occurrence of the violation
as a matter of defense by recoupment or set-off in such action,
except as otherwise provided by State law.

Pennsylvania permits borrowers to raise recoupment under TILA.  See Household Consumer
Discount Co. v. Vespaziani, 490 Pa. 209 (1980); In re Grayboyes, 2006 WL 437546, at *3 n.2,
*4 (E.D. Pa. 2006).

See Smith v. EquipCredit Corp., 2002 WL 32349873, at *6.  In this proceeding, however, the plaintiff does not suggest that equitable tolling is at issue.[18]

Instead, she argues that even if the limitations period has expired for affirmative damages recovery, a borrower who proves TILA or HOEPA violations is entitled to recoupment, which can reduce a creditor's proof of claim.  Plaintiff's Memorandum, at 17.  See, e.g., In re Community Bank of Northern Virginia, 418 F.3d 277, 305 (3d Cir. 2005) ("No statute of limitations applies to a borrower asserting a violation of TILA or HOEPA as a defense (by recoupment or set-off) in a foreclosure action.); In re Norris, 138 B.R. 467, 470-71 (E.D. Pa. 1992); In re Roberson, 262 B.R. 312, 322 (Bankr. E.D. Pa. 2001).[19]  Bank One does not dispute the plaintiff's ability in this proceeding to seek to offset the mortgagee's allowed claim.  Therefore, only the affirmative damage components of counts II and III are time-barred.[20]  As with the rescission relief mentioned above, those aspects of count II and III seeking affirmative recovery of damages shall be stricken.

An appropriate order shall be entered granting Bank One's motion to dismiss by striking aspects of counts II and III and denying the motion in part.

---

[18]Given her rescission notice in April 2003, sent by counsel on her behalf, it would be difficult to demonstrate that tolling should apply.

[19]The plaintiff also contends that her rescission claim was timely brought under 12 C.F.R. § 226.23.  I need not consider that issue, given my conclusion that I have no subject matter jurisdiction over that claim and that, if I did, res judicata would apply.

[20]I do not now address whether plaintiff's state law claim in count I is outside the limitations period.  Bank One's motion did not clearly raise the issue and so the plaintiff did not address it in her responsive memorandum.

39

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                          :        Chapter 13

CHERYL A. RANDALL                              :

              Debtor                           :        Bankruptcy No. 06-11832
_____

CHERYL A. RANDALL                              :

                                               :

              Plaintiff                        

        v.                                     :

BANK ONE NATIONAL ASSOCIATION :
As Trustee and                                          Adversary No. 06-0397
BANKERS FIRST MORTGAGE CO.     :

              Defendants
_____

....................................................

ORDER

....................................................

AND NOW, this 1st day of November 2006, upon motion of defendant

Bank One, N.A. to dismiss this adversary proceeding, pursuant to Fed. R. Bankr. P. 7012,

        And for the reasons stated in the accompanying memorandum,

        It is hereby ordered that the motion is granted in part and denied in part.

Those portions of Counts II and III are stricken to the extent that the plaintiff demands

rescission under 15 U.S.C. § 1635, and to the extent she demands affirmative damages

under 15 U.S.C. § 1640.  In other respects, the motion to dismiss is denied.

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Devon E. Sanders, Esq.
Community Legal Services, Inc.
3638 N. Broad St.
Philadelphia, PA 19140

Joseph F. Riga, Esq.
46 West Main Street
Maple Shade, NJ 08052

Bankers First Mortgage, Inc.
Attn: Managing Agent
9505 Reistertown Road
Owing Mills, MD 21117